IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OWSHADRAM MOHABIR,<br><br>               Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | CIVIL ACTION<br>NO. 14-0555<br><br><br>CRIMINAL ACTION<br>NO. 10-0215 |

## OPINION

**Slomsky, J.**                                                                                                    **December 11, 2014**

### I.      INTRODUCTION

Before this Court is Petitioner Owshadram Mohabir's pro se Motion to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"). (Doc. No. 88.)

On February 4, 2011, after a four-day jury trial, Petitioner was convicted of conspiring to transport in interstate commerce stolen motor vehicles and to receive, possess, store, and sell stolen goods, valued at $5,000 or more, in violation of 18 U.S.C. § 371.[1] (Doc. No. 76.) On February 18, 2011, Petitioner filed a Motion for Judgment of Acquittal and/or New Trial. (Doc. No. 64.) On June 16, 2011, this Court filed a Memorandum and Order denying the Motion. (Doc. No. 72.)

---

[1] Petitioner was tried on a four-count Superseding Indictment returned by a Grand Jury on December 14, 2010. (Doc. No. 33.) Petitioner was convicted only on Count 1, which, as noted above, charged him with conspiring to transport and possess stolen motor vehicles and goods in violation of 18 U.S.C. § 371. (Id. at 1-4.) The jury found Petitioner not guilty on Counts 2 to 4, which charged Petitioner with possessing two stolen Hyster Forklifts in violation of 18 U.S.C. § 2313 and § 2 (Count 2); possessing stolen goods of a value of $5,000 or more, that is, stolen Hyster Forklifts and assorted tools, in violation of 18 U.S.C. § 2315 and § 2 (Count 3); and soliciting another to commit a crime of violence in violation of 18 U.S.C. § 373 (Count 4). (Id. at 4-6.)

On June 30, 2011, this Court sentenced Petitioner to serve fifty-one months imprisonment to be followed by a three-year term of supervised release. Petitioner was also required to pay $290,520 in restitution and a $100 special assessment. (Doc. No. 76.) On July 8, 2011, Petitioner filed a Notice of Appeal to the Third Circuit Court of Appeals. (Doc. No. 78.) On January 17, 2013, the Third Circuit affirmed Petitioner's conviction and sentence. United States v. Mohabir, 510 F. App'x 122 (3d Cir. 2013). Petitioner then filed a petition for certiorari with the U.S. Supreme Court, which was denied on October 7, 2013. Mohabir v. United States, 133 S. Ct. 324 (2013).

On March 24, 2014, Petitioner filed his § 2255 Motion, asserting that his counsel was constitutionally ineffective and that the evidence the Government presented at trial was insufficient to support his conviction. (Doc. No. 88.) On April 30, 2014, the Government filed its Response in Opposition. (Doc. No. 91.) On September 19, 2014, Petitioner filed a Reply to the Government's Response.[2] (Doc. No. 99.)

Petitioner's § 2255 Motion is now ripe for decision. For reasons that follow, Petitioner's § 2255 Motion (Doc. No. 88) will be denied.

## II. EVIDENCE PRESENTED AT TRIAL

This case arose out of an investigation into the interstate shipment and possession of stolen heavy equipment, including forklifts and skid steers. (Doc. No. 91 at 4.) The evidence presented at trial included testimony from investigators, victims of the thefts, one of Petitioner's

---

[2] On September 19, 2014, Petitioner filed with this Court a Reply to the Government's Response in Opposition to the § 2255 Motion. (Doc. No. 99.) This filing consists of a letter that Petitioner sent to the Department of Justice Executive Office for United States Attorneys lodging a complaint against various FBI agents and the Assistant U.S. Attorney involved in prosecuting his case. (Doc. No. 99 at 3-5.) The Court has reviewed Petitioner's filing, and it does not support the arguments Petitioner made in his § 2255 Motion. It is simply an attack on the prosecutors assigned to his case.

employees, and a man named Orlando Perez, who was an unindicted coconspirator in this case. (Id. at 14.) The evidence also consisted of audio and visual recordings of Petitioner's conversations. (Id.) A more detailed discussion of the evidence presented at trial follows, including compelling corroborating evidence.

### A. The Investigation Begins

At trial, New York State Trooper William Dengler testified that in August 2009 he began investigating a series of thefts of heavy equipment and commercial tools around Kirkwood, New York, which is near the Pennsylvania border. (Doc. No. 83 at 30-31.) Trooper Dengler's investigation revealed that a Ryder truck stolen from Great Bend, Pennsylvania was utilized in the thefts. (Id. at 37-39.) As a result of this clue, Trooper Dengler reviewed surveillance video from various businesses in the area where the thefts were occurring. (Id. at 39-43.) Trooper Dengler developed two suspects from his review, but could not identify them. (Id.)

On January 18, 2010, there was a break in the case. During a burglary at Gorick Construction in Kirkwood, New York, an employee at a neighboring business noticed the suspicious activity and recorded the license plate number of the burglars' trailer. (Id. at 43.) This number was run through the New York State Department of Motor Vehicles database, which revealed that the trailer was registered to a man named Orlando Perez and that Perez had a Pennsylvania driver's license. (Id. at 47.) The New York State Police then contacted the Pennsylvania State Police, advised them of Perez's suspected criminal activities, and obtained Perez's Pennsylvania driver's license photograph. (Id. at 47-49.) Perez's photograph was compared to the surveillance videos that Trooper Dengler had previously reviewed, and it was conclusively determined that Perez was the person depicted in the videos. (Id. at 48.)

According to testimony from Pennsylvania State Trooper John McGeary, Pennsylvania and New York State Police conducted surveillance on Perez near his home in Monroe County, Pennsylvania on February 24, 2010. (Id. at 103-04.) Investigators followed Perez as he drove down from Monroe County to King of Prussia, Pennsylvania, but abandoned their surveillance when they lost Perez in traffic congestion. (Id. at 103-05.) It was later determined that a business named DOPACO, located in Downington, Pennsylvania, which is not far from King of Prussia, had three forklifts stolen on February 24. (Id. at 106.) Investigators reviewed video surveillance from DOPACO, which showed Perez in DOPACO's warehouse at 9:03 p.m. on February 24 wiping down the push bar on the door he used to enter the building, so he would not leave any fingerprints. (Id. at 107-08.)

On April 22, 2010, investigators installed an electronic surveillance tracker on two of Perez's vehicles under authorization of a signed tracking order from Monroe County Court of Common Pleas, Stroudsburg, Pennsylvania. (Id. at 109-10.) On May 14, 2010, electronic surveillance showed that Perez had moved one of his vehicles, and investigators began to follow him. (Id. at 110-11.) Investigators followed Perez to a warehouse in Bethlehem Township, Pennsylvania, where Perez was observed stealing a forklift which he loaded onto his truck. (Id. at 111-12.) Surveillance continued into the next day, when investigators followed Perez driving his truck loaded with the stolen forklift down to the Hunts Point section of the Bronx, New York. (Id.)

In Hunts Point, Perez was observed and photographed delivering the stolen forklift to a pallet company. (Id. at 114-20.) Investigators then saw Perez walk roughly a block and a half to All Models Forklift, the business owned and operated by Petitioner. (Id. at 120.) Perez was seen leaving All Models Forklift operating a red skid steer, which Perez later testified he stole from

4

the Bethlehem, Pennsylvania area and sold to Petitioner for $2,000. (Doc. No. 82 at 72.) Perez testified that on that day he was delivering the stolen skid steer from All Models Forklifts to another person who had purchased it from Petitioner. (Id.) Investigators ended their surveillance that day shortly after observing Perez transfer the skid steer. (Doc. No. 83 at 124.)

### B. Perez Is Arrested and Cooperates with Law Enforcement

In the early morning hours of May 23, 2010, investigators again followed Perez. (Doc. No. 83 at 138.) This time, Perez drove to an industrial facility in Frackville, Pennsylvania, where he stole two forklifts. (Id. at 138-42.) Investigators continued following Perez and arrested him shortly after he crossed into New Jersey. (Id. at 140.) The two stolen forklifts were found in the trailer hitched to Perez's truck. (Id. at 142.)

Perez decided to start cooperating with investigators that morning. (Doc. No. 82 at 48.) He identified Petitioner as a buyer of stolen heavy equipment. (Id. at 48-49.) He told investigators that Petitioner would purchase stolen forklifts so he could rent them, sell them, or ship them overseas. (Id. at 49.) Perez testified at trial that he had stolen over one hundred pieces of heavy equipment and that Petitioner would sometimes give him keys that he could use to start the forklifts that he stole. (Id. at 55-56.)

On June 29, 2010, Perez met with agents from the Federal Bureau of Investigation (FBI) in the Bronx to arrange for him to make a consensual video and audio recording of Petitioner. (Doc. No. 84 at 17.) The objective was to have Perez elicit statements from Petitioner to establish that Petitioner knew he was buying stolen equipment from Perez. (Id. at 18-19.) The FBI agents followed Perez as he drove to All Models Forklifts. (Id. at 20.) When Perez arrived, he went inside the building where he had a twenty-minute conversation with Petitioner. (Id.) A

video and audio recording of the conversation was made by a camera that Perez was wearing. (Id.)

During their conversation, Perez told Petitioner that he had two forklifts that Petitioner wanted him to steal from an auction in Upstate New York. (Doc. No. 82 at 83-84.) Perez asked Petitioner for two vehicle identification plates in case he was stopped by law enforcement. (Id. at 84-85.) Petitioner told Perez that he would pay Perez $3,000 per forklift and instructed Perez to deliver the forklifts at night. (Id. at 86-87.)

Also during the meeting, Petitioner and Perez discussed replacing the identification plates on stolen forklifts with plates from forklifts legitimately acquired. (Id. at 92-93.) Petitioner directed Perez to maintain possession of the original identification plates since these plates would be needed for any repairs. (Id. at 84.)

### C. A Search Warrant Is Executed and Petitioner Is Arrested

According to testimony from FBI Special Agent Aris Anastasas, FBI agents and New York and Pennsylvania State Troopers executed a search warrant on July 8, 2010 at All Models Forklift. (Doc. No. 84 at 23.) Among the items seized were two forklifts stolen from a business called Milton Transportation and a "limited edition Harley Davidson" toolbox containing tools worth $42,096 that was stolen by Perez from Al Smith Rigging in Kirkwood, New York. (Doc. Nos. 83 at 70-71; 84 at 28.) Pennsylvania State Trooper McGeary testified that other items seized included a blank identification plate for a forklift and tools used to stamp identification numbers on plates. (Doc. No. 83 at 155-63.) Blank plates and stamping tools, Trooper McGeary testified, are not illegal to possess but can be used to mask the identity of a stolen forklift. (Id. at 155.)

Petitioner was arrested during the execution of the search warrant. According to Special Agent Anastasas's testimony, Petitioner made several unsolicited statements during the execution of the warrant and while he was being transported to his initial court appearance in Scranton, Pennsylvania. (Doc. No. 84 at 31.) Petitioner said that "Orlando [Perez] sells stolen forklift[s] to everyone in the Bronx in Hunts Point." (Id.) Petitioner further stated that "[a]bout 90 percent of all the forklifts in Hunts Point are stolen and why is he the only one getting in trouble for this." (Id. at 32.) In addition, Petitioner indicated that he fixed approximately twenty stolen forklifts for a business called Gabriel Pallets. (Id.)

The day the search warrant was executed, a person name Michael Markus approached an FBI Special Agent and told him that his company had purchased a forklift from All Models Forklift. (Doc. No. 83 at 170.) Trooper McGeary testified that he later determined that the forklift had been stolen from a company named Penn Model in East Rutherford, New Jersey before it was sold to Markus's business by All Models Forklift. (Id.) Testimony from Levain Kimble, an employee at Penn Model, corroborated Trooper McGeary's testimony. Kimble testified that three forklifts were stolen from Penn Model on September 14, 2006, each having an estimated value of $21,375. (Id. at 79.)[3]

### D. Additional Evidence Presented at Trial and Petitioner's Conviction

All of the above information was elicited at trial. In addition, the jury heard testimony from Perez explaining Petitioner's criminal enterprise in further detail, including the procedure

---

[3] While Petitioner was in custody awaiting trial at Lackawanna County Prison in Scranton, he solicited two fellow inmates to kill Perez so that he could "beat his case." (Doc. No. 82 at 165.) At trial, the jury heard testimony from these fellow inmates detailing Petitioner's solicitations. (Id. at 165-67, 200-01.) At the direction of the FBI, one of the inmates recorded a conversation he had with Petitioner about killing Perez. (Id. at 167.) Petitioner was acquitted by the jury of the offense relating to these events.

7

Perez and Petitioner would follow when Perez delivered a stolen forklift. (Doc. No. 82 at 66-70.) Perez testified that he sold thirty to forty machines to Petitioner between 2004 and 2010, and that he told Petitioner that he was selling Petitioner stolen forklifts. (Id. at 62-63.) Perez's testimony additionally revealed that Petitioner would tell him which machines Petitioner wanted him to steal. (Id. at 67.) According to Perez, Petitioner also warned him to be careful because the crimes being committed were federal crimes. (Id. at 68.)

The jury also heard testimony from victims of the thefts. One of the victims who testified was Wendy Godshall, who identified a skid steer sold by Petitioner as one stolen from her family's company. (Doc. No. 84 at 9-10.) In addition, one of Petitioner's employees at All Models Forklift, Subash Ramsingh, testified to his involvement in receiving stolen machines and preparing them for sale. (Doc. No. 82 at 23-30.)

At trial, Petitioner's attorney cross-examined Perez extensively. (Id. at 111-58.) This cross examination revealed that Perez had been arrested and imprisoned several times before, and that he cooperated with law enforcement in Petitioner's case in hope of receiving a more lenient sentence. (Id. at 113-16.) Petitioner's attorney also called Petitioner's son to testify that metal stamping tools could be used in a legal automotive mechanic business. (Doc. No. 84 at 65-68.)

After the attorneys for the Government and Petitioner presented their closing arguments, the jury deliberated for one day and then returned a verdict finding Petitioner guilty of conspiracy (1) to receive and possess, store, and sell a stolen motor vehicle, which vehicle had crossed the state boundary after being stolen, knowing the same to have been stolen; and (2) to receive, possess, store, and sell certain stolen goods with a value of $5,000 or more, which goods

had crossed the state boundary after being stolen, knowing the same to have been stolen. (Doc. No. 85 at 7-8.)

## III.    PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL ARGUMENT

Petitioner's first argument in his § 2255 Motion is that his counsel was ineffective in violation of his rights under the Sixth Amendment to the United States Constitution. (Doc. No. 88 at 1-3.)

### A.    Ineffective Assistance of Counsel Standard of Review

Pursuant to the Sixth Amendment to the United States Constitution, every accused individual has a right to representation that meets "an objective standard of reasonableness." U.S. Cont. amend. VI; Strickland v. Washington, 466 U.S. 668, 688 (1984). To evaluate Petitioner's claims of ineffective assistance of counsel, the Court must apply a two-prong test enunciated by the Supreme Court in Strickland, 466 U.S. 688. Under this test, trial counsel is presumed to have acted reasonably and effectively unless Petitioner can show that: (1) trial counsel's "representation fell below an objective standard of reasonableness[;]" and (2) there was a "reasonable probability that, but for [trial counsel's] unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694.

The Court's scrutiny of counsel's performance, though, "must be highly deferential . . . [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. To overcome the presumption of sound trial strategy, "[P]etitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005).

### B. Petitioner Has Not Established that His Counsel Was Constitutionally Ineffective

Here, Petitioner asserts that his counsel was constitutionally ineffective by failing to: (1) cross-examine several Government witnesses; (2) attempt to impeach the testimony of Orlando Perez, a key Government witness; and (3) interview potential defense witnesses. (Doc. No. 88 at 1-3.) For reasons that follow, these arguments are without merit.

#### 1. Petitioner's Counsel Was Not Constitutionally Ineffective for Choosing Not to Cross-Examine Three Government Witnesses

Petitioner argues that his counsel at trial was constitutionally ineffective for failing to cross-examine several Government witnesses. (Doc. No. 88 at 2.) Petitioner, however, does not provide any support for this argument beyond this bald allegation. At trial, Petitioner's counsel chose not to cross-examine three victims of heavy machinery thefts whose testimony only went to the fact that certain machinery was stolen from their businesses. (Doc. Nos. 83 at 73-90; 84 at 3-12.) Petitioner neither explains how his counsel should have questioned these witnesses nor identifies what evidence was not elicited as a result of counsel's decision not to question them.

As explained above, for Petitioner to overcome the presumption that his counsel's strategy fell within the wide range of reasonable professional assistance, "[P]etitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005). Since Petitioner has failed to provide any support for his argument, he has not overcome this presumption. As such, Petitioner's argument that his counsel was constitutionally ineffective for failing to cross-examine these witnesses is unavailing.

### 2. Petitioner's Counsel Did Attempt to Impeach Perez on Cross-Examination

Petitioner's next argument is that his counsel was constitutionally ineffective for failing to attempt to impeach Orlando Perez, a key Government witness, at trial. (Doc. No. 88 at 2.) Petitioner's claim is again unsupported.

As detailed above, Perez was an unindicted coconspirator who cooperated with the FBI and other law enforcement agencies during their investigation of Petitioner and testified against Petitioner at trial. Contrary to Petitioner's assertion, the trial transcript reveals that Petitioner's counsel zealously attempted to impeach Perez's testimony during an extensive cross-examination. (Doc. No. 82 at 111-58.) For instance, Petitioner's counsel established that Perez had a long criminal history (id. at 111, 122-28) and that he cooperated with law enforcement because he wanted to receive a shorter prison sentence (id. at 114-15). Additionally, Petitioner's counsel revealed that Perez had a plea agreement with the Government that provided for the Government to recommend leniency to the Court in exchange for Perez's cooperation and testimony. (Id. at 120.) In addition, counsel's cross-examination was apparently effective, since Petitioner was acquitted of the charges contained in three of four counts of the Superseding Indictment.

The trial transcript reveals that Petitioner's counsel engaged in an extensive and effective cross-examination of Perez. Petitioner's assertion that his counsel did not attempt to impeach Perez is belied by the record. Moreover, Petitioner has not put forth any support for the notion that his counsel's attempts to impeach Perez were in any way insufficient. Since Petitioner has failed to overcome the presumption that his counsel's conduct fell within the wide range of reasonable professional assistance, his ineffective assistance of counsel claim cannot succeed on this ground.

### 3. Petitioner's Claim that His Counsel Was Ineffective for Failing to Conduct Defense Witness Interviews Is Unavailing

Petitioner's final argument in support of his ineffective assistance of counsel claim is that his counsel failed to conduct any defense witness interviews, thereby prejudicing his defense. (Doc. No. 88 at 3.) As with his previous arguments, Petitioner provides no support for his assertion. He does not identify anyone whom his counsel could have interviewed, or explain what would have been revealed from any additional interviews. In addition, Petitioner's counsel did call one defense witness, Petitioner's son, to testify to the fact that metal stamping tools found at Petitioner's business could also be used for legitimate business purposes. (Doc. No. 84 at 65-68.) Again, since Petitioner has failed to set forth any support for his claim, he has not overcome the presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. As such, his ineffective assistance of counsel claim on this ground is unavailing.

## IV. PETITIONER'S INSUFFICIENT EVIDENCE ARGUMENT

Petitioner's second ground for relief is that the evidence presented at trial is insufficient to support his conviction because it did not establish that Petitioner knew the items he bought from Perez were stolen. (Doc. No. 88 at 3-6.) For reasons that follow, Petitioner's argument is not persuasive.

### A. Petitioner's Insufficient Evidence Claim Will Be Denied Because it Has Already Been Unsuccessfully Litigated

In his § 2255 Motion, Petitioner raises the same insufficient evidence argument he previously raised in his Motion for Judgment of Acquittal and/or New Trial. (Doc. No. 64.) This Court denied Petitioner relief on this ground in an Opinion dated June 16, 2011. (Doc. No. 72.) Petitioner appealed to the Third Circuit, which affirmed this Court's ruling. See United States v. Mohabir, 510 F. App'x 122 (3d Cir. 2013). Petitioner then filed a petition for certiorari with the

U.S. Supreme Court, which denied his petition on October 7, 2013. Mohabir v. United States, 133 S. Ct. 324 (2013).

Under Third Circuit law, absent countervailing considerations, "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981); see, e.g., United States v. Schwartz, 925 F. Supp. 2d 663, 691-92 (E.D. Pa. 2013); Flood v. United States, 867 F. Supp. 2d 539, 544-45 (D. Del. 2012) (barring habeas petitioner's claim of insufficient evidence to support a conviction because it had been fully litigated and denied by the district court and Third Circuit). Countervailing considerations meriting relitigation of an argument include an intervening change in law or an "extraordinary circumstance" that has occurred since the court's original decision. Flood, 867 F. Supp. 2d at 545.

Here, Petitioner claims that the evidence presented at trial was insufficient for the jury to convict him because it does not establish that Petitioner knew the equipment was stolen. (Doc. No. 88 at 4.) In support of his claim, Petitioner argues that the Government cannot "only rely upon the test[imony] of a known liar and criminal himself, Orlando Perez[,] to argu[e] petitioner was a participant in the alleged conspiracy." (Id. at 5.) This is the same argument considered and rejected by this Court and the Third Circuit in Petitioner's Motion for Judgment of Acquittal and/or New Trial. (Doc. Nos. 64 at 1-2; 72 at 2-8); Mohabir, 510 F. App'x 122. Petitioner does not claim that there are any countervailing considerations that would merit relitigating this claim. For these reasons, this Court will not grant Petitioner his requested relief based on his insufficient evidence argument.

### B. Petitioner's Insufficient Evidence Claim Would Also Be Denied on the Merits

Even if this Court were to consider Petitioner's insufficient evidence claim, it would be denied on the merits. Reasons for this determination are detailed in this Court's Opinion of June 16, 2011 (Doc. No. 72), which was affirmed by the Third Circuit in Mohabir, 510 F. App'x 122. The Court will briefly reiterate the reasons below.

#### 1. Sufficiency of the Evidence Standard of Review

As explained in the Opinions by this Court and the Third Circuit denying Petitioner's Motion for Judgment of Acquittal and/or New Trial, Petitioner faces a heavy burden in arguing that the evidence was insufficient to sustain his conviction. (Doc. No. 72 at 2); Mohabir, 510 F. App'x at 123. This Court must view the evidence in the light most favorable to the Government, and will uphold the jury's verdict if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Voigt, 89 F.3d 1050, 1080 (3d. Cir. 1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In determining the sufficiency of the evidence, the Court does not weigh the evidence or determine the credibility of witnesses. United States v. Haywood, 363 F.3d 200, 204 n.3 (3d Cir. 2004). A finding of insufficiency of the evidence is confined to the rare case where the Government's failure of proof is "clear." Id.; United States v. Smith, 294 F.3d 473, 477 (3d Cir. 2002).

#### 2. The Evidence Presented at Trial Was Sufficient to Sustain Petitioner's Conviction

Here, Petitioner was convicted of conspiring: (1) to receive and possess, store, and sell a stolen motor vehicle, which vehicle had crossed the state boundary after being stolen, knowing the same to have been stolen, in violation of 18 U.S.C. § 2313; and (2) to receive, possess, store, and sell certain stolen goods with a value of $5,000 or more, which goods had crossed the state

boundary after being stolen, knowing the same to have been stolen, in violation of 18 U.S.C. § 2315. (Doc. No. 85 at 7-8.)

At trial, the Government was required to prove the following elements beyond a reasonable doubt for the jury to convict Petitioner of conspiring to commit these crimes: (1) two or more persons agreed to commit an offense against the United States, which were violations of 18 U.S.C. §§ 2313 and 2315, as noted above; (2) Petitioner was a party to or member of that agreement; (3) Petitioner joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; and (4) at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act to further the objective. See 18 U.S.C. § 371; Model Jury Instructions – Criminal – Third Circuit, § 6.18.371A.

Petitioner argues that the Government's case is only supported by Perez's testimony, which is insufficient to sustain his conviction. (Doc. No. 88 at 3-6.) This argument is unavailing.

As detailed above, the evidence presented at trial consisted not only of Perez's testimony, but also testimony from investigators, victims, and an employee of Petitioner's business. Also in evidence was the audio and visual recording of Perez and Petitioner discussing stolen forklifts that Perez wanted to sell to Petitioner, identification plates for these stolen forklifts, and the price Petitioner would pay Perez for these forklifts. (Doc. No. 82 at 83-87.)

Petitioner also made several unsolicited statements while the search warrant of his business was being executed and while he was being transported to his initial court appearance in Pennsylvania. According to testimony from an FBI Special Agent, Petitioner stated that "Orlando [Perez] sells stolen forklift to everyone in the Bronx in Hunts Point" and that "[a]bout

90 percent of all the forklifts in Hunts Point are stolen and why is he the only one getting in trouble for this." (Doc. No. 84 at 31-32.)

Stolen property was also recovered at Petitioner's business when the search warrant was executed. Among the items seized were two forklifts stolen from a business called Milton Transportation and a "limited edition Harley Davidson" toolbox containing tools worth $42,096 that was stolen by Perez from Al Smith Rigging in Kirkwood, New York. (Doc. Nos. 83 at 70-71; 84 at 28.)

Additionally, Perez and Petitioner's employee, Subash Ramsingh, testified about their involvement in the conspiracy to steal and then sell forklifts and other heavy machinery. For instance, Perez testified that he sold thirty to forty machines to Petitioner between 2004 and 2010, and that he informed Petitioner that this machinery was stolen. (Doc. No. 82 at 52-63.) Perez also testified that Petitioner would give him instructions on which machines to steal, and warned him to be careful since the crimes being committed were federal crimes. (Id. at 68.) Ramsingh testified to the procedure that he and Petitioner would follow when stolen property was delivered to Petitioner's business. (Id. at 23-30.)

The evidence the Government presented at trial, briefly summarized above, was sufficient to establish the elements of the crime Petitioner was convicted of beyond a reasonable doubt. It is not the Court's place to "usurp the role of the Jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the Jury." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005). Consequently, Petitioner's argument that his conviction was based only on Perez's testimony, and that it was not sufficient for the jury to convict him, is unavailing.

## V.     CONCLUSION

For the reasons stated, Petitioner's Motion to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 88) will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OWSHADRAM MOHABIR,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CIVIL ACTION<br>NO. 14-0555<br><br><br><br>CRIMINAL ACTION<br>NO. 10-0215 |

### ORDER

**AND NOW**, this 11th day of December 2014, upon consideration of Petitioner's Motion to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 88), the Government's Response in Opposition (Doc. No. 91), and Petitioner's Reply in Further Support (Doc. No. 99), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 88) is **DENIED**.

BY THE COURT:

*Joel Slomsky*
JOEL H. SLOMSKY, J.